## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| GLORIA TORRES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-2571 |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case appealing a denial of Social Security benefits, Plaintiff Gloria Torres has filed a Motion for Summary Judgment [Doc. # 13]. Defendant has filed a response seeking dismissal of the case, which the Court construes as a cross-motion for summary judgment. Defendant's Response Brief [Doc. # 15]. Plaintiff has filed a reply [Doc. # 18]. The motions now are ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Plaintiff's motion should be **granted**, that Defendant's motion should be **denied**, and that this case should be **remanded** to the Commissioner.

I.    **BACKGROUND**

A.    **Procedural Background**

Plaintiff Gloria Torres filed an application with the Social Security Administration ("SSA") on February 2, 2011, seeking supplemental security income ("SSI") benefits under Title XVI and disability benefits under Title II.  She alleges onset of disability on January 25, 2011.  After being denied benefits initially and on reconsideration, Torres timely requested a hearing before an Administrative Law Judge ("ALJ") to review the denial.

On March 13, 2012, Plaintiff appeared before ALJ Susan J. Soddy for an administrative hearing.  R. 104-32.  She was represented by attorney Jeff Larsen.  The ALJ heard testimony from vocational expert Rosalind Y. Lloyd.  Plaintiff's son, John Torres, also testified.  Plaintiff testified with the assistance of an interpreter.

On April 20, 2012, the ALJ denied Plaintiff's request for benefits.  R. 50-70. On June 27, 2013, the Appeals Council denied Plaintiff's request for review.  R. 1-5. Plaintiff filed this case on September 3, 2013, seeking judicial review of the Commissioner's denial of her claim for benefits.  Complaint [Doc. # 1].

B.    **Factual Background**

Torres alleges disability on the basis of multiple impairments, including obesity, degenerative joint disease, bilateral shoulder arthropathy, rheumatoid arthritis, and

diabetes and related complications.  On her alleged onset date of January 25, 2011, she was fifty-five years old.

Torres' medical records indicate that she has been treated by Felipe Rios, M.D., since at least 2006.  *See, e.g.*, R. 538-79, 623-725.  Dr. Rios was her primary care physician, and treated her for multiple issues including diabetes and hypertension.  He also referred her to other physicians for treatment of her joint pain and other medical issues.

In 2010, before the relevant period for this appeal, Dr. Rios referred Torres to an orthopedist for assessment of shoulder and neck pain from a motor vehicle accident.  On June 28, 2010, the specialist, Dr. Valenson, assessed Torres with degenerative joint disease in the lumbar spine and the cervical spine, effusion in both knees, and calcific tendinitis in the shoulders.  He recommended MRIs and other additional testing.  R. 311.  These assessments were supported by x-rays and Dr. Valenson's physical examination.  R. 311; *see* R. 368-70, 774-76.  In July, Torres had MRI examinations of her lumbar spine and both shoulders, indicating mild arthrosis and disk dessication in her lumbar spine, and a full thickness rotator cuff tear in her shoulders.  R. 362-67.  In December 2010, MRIs of both knees revealed mild degenerative joint disease and joint effusion in both knees.  R. 360-61.

On February 1, 2011, at the beginning of the period relevant to this appeal,

Torres had a follow-up appointment with Dr. Rios and complained of pain in both hands.  Her blood sugar was very high (588).  Dr. Rios' records list diagnoses of diabetes, high blood pressure, hyperlipidemia, and anemia.  Torres was continued on medications and counseled regarding diet and exercise.  R. 312-13.  Torres was seen again by Dr. Rios on March 8 for management of the same medical problems.  R. 413-14.

On March 28, 2011, Daryl K. Daniel, M.D., conducted a consultative examination of Torres for the SSA.  R. 452-55.  Dr. Daniel stated that he had reviewed medical information from two dates in January and February 2011, indicating treatment for diabetes, anemia, high blood pressure, and hyperlipidemia. Dr. Daniel noted that Torres had had diabetes for twenty years, with an average blood sugar of about 300 on daily checks, that she was taking insulin, and that as a complication of diabetes she had eye disease requiring laser surgery.  He further noted her arthritis in her shoulders and hips, and past left shoulder surgery, indicating that Torres at times had morning and evening pain and trouble getting out of bed, but did not require a cane, crutch, or walker and had not seen a physical therapist or chiropractor.  Upon physical examination, Dr. Daniel assessed Torres' gait as normal, with no problems standing from a sitting position; with hand grip/strength at 5/5 bilaterally; and with lower extremity strength at 5/5 bilaterally.  He noted that Torres

was unable to squat.  He recorded his clinical impressions as type two diabetes, poorly controlled; bilateral shoulder arthropathy; hypertension; and polyarthralgia, unspecified.

On April 22, 2011, based on a review of Dr. Daniel's exam, the SSA completed a Case Assessment Form, which stated summarily that Torres had no deficits noted at the consultative exam; that her vision was normal with no end organ damage; that her extremities' range of motion was normal; that there was no evidence of a significant medically determinable impairment at the time; and that Torres' alleged limitations were not fully supported by the evidence of record.  R. 383.   This assessment was affirmed by a second reviewing doctor on August 12, 2011.  R. 451.

On May 17 and 24, 2011, Torres returned to Dr. Rios for management of her conditions.  R. 611-14.  Her records list diagnoses of diabetes, high blood pressure, hyperlipidemia, anemia, and osteoarthritis.  On May 24, her blood sugar was 477.  R. 612.  At her follow-up appointment on July 22, her blood sugar was 409, and she complained of numbness in her left leg.  R. 609-10.  On August 5, her blood sugar was 462.  R. 607-08.  On December 5, her blood sugar was 409.  Torres complained of neck pain and that her toenails were turning black.  R. 605-06.  On December 13, her blood sugar was 438.  R. 603-04.  The records of these appointments indicate that Dr. Rios prescribed medication and provided other recommendations and referrals, but the

handwriting is largely illegible.

Other records from 2011 indicate that Dr. Rios provided Torres with medical referrals for various impairments.  He referred Torres to Dr. Richard Warneke for treatment of her anemia and gastritis.  R. 824, 826, 834. He also referred her to rheumatologist Dr. Phillip Waller for osteoarthritis, fibromyalgia, and to rule out rheumatoid arthritis. R. 827, 832.   In addition, Dr. Rios ordered imaging for assessment of Torres' neck and hand pain.  R. 830, 833.   The December 2011 x-rays of Torres' cervical spine and hands showed no significant radiographic abnormalities.  R. 582-583.[1]

In early 2012, Torres continued regular appointments with Dr. Rios, seeing him in February, March, and April.  R. 838-41.  Torres also began treatment at the office of Dr. Phillip Waller, the rheumatologist to whom she had been referred by Dr. Rios. On February 7, 2012, Torres had her initial appointment at Dr. Waller's office and was seen by Deanna Wallace, P.A.C.  R. 27-29, 589-91.  Torres complained of pain in her neck, lower back, wrists, knees, and hands, with the worst pain in her wrists and fingers.  She stated that her knee pain worsened with activity.  She further stated that

---

[1]    The records further indicate that Torres had laser eye surgery in 2011 due to complications from diabetes, and that in post-surgical appointments in August and December 2011 she complained of blurry vision.  R. 520-37, 814.  Torres also saw a podiatrist in December 2011 for diabetic foot care.  R. 517-19.

she suffered from intermittent swelling in her hands and feet which worsened the pain and caused difficulty in walking or using her hands.  Wallace summarized the imaging from 2010 and 2011, noting the rotator cuff tear in Torres' shoulders , small joint effusion and patchy heterogenous marrow signal in both knees, and hand x-rays within normal limits.  She conducted a rheumatology exam and noted a normal range of motion in Torres' joints, including shoulders, wrists, hips, and spine.  She noted tenderness in the right shoulder; tenderness and slight bony enlargement in both hands; perilumbar tenderness; and tenderness in the feet.  She assessed Torres with osteoarthrosis (multiple sites) and polyarthralgia, stating that the diagnoses were supported by the imaging, laboratory results, synovitis (inflammation), and pain symptoms.  She directed further laboratory testing and imaging to check for erosive disease and inflammatory arthritis, prescribed medication for pain, and instructed Torres to follow up several weeks later.

On March 1, 2012, Torres followed up with Wallace at Dr. Waller's office.  R. 24-26.  Torres was still recovering from an emergency appendectomy in mid-February.  *See* R. 835-37.  Torres rated her pain as 7/10 and fatigue as 8/10.  Her rheumatology exam noted bilateral synovitis in the wrists, mild synovitis in her left hand, and tenderness and bony enlargements as before.  Torres was assessed with rheumatoid arthritis, with records noting that the MRI performed on February 15,

2012, revealed small erosions of the right wrist and left hand, and that the laboratory findings of February 7, 2012, were consistent with seronegative, erosive rheumatoid arthritis.  R. 25.  She also was assessed with osteoarthrosis of the spine and shoulders. Medications for both conditions were discussed but could not be prescribed immediately because a list of her current medications was not available.  The progress notes were completed by Wallace and signed by Dr. Waller.  R. 26.

On March 2, 2012, Wallace completed a questionnaire entitled "Medical Opinion re: Ability to Do Work Related Activities (Physical)."  R. 598-601.  She assessed Torres' maximum ability to lift and carry on an "occasional basis" as ten pounds and on a "frequent basis" as less than ten pounds, stating that these assessments were supported by a physical examination, laboratory results with "elevated ESR," x-rays of the knees, and MRI examinations of the shoulders, spine, and hands/wrists indicating degenerative arthritis and erosions consistent with rheumatoid arthritis. She assessed Torres' maximum ability to stand and walk as less than two hours in an eight hour day, citing the same supporting examinations, labs, and imaging.  She assessed no limit in Torres' ability to sit, but stated she needed to change position every 30 minutes, and further stated that Torres would need to lie down at unpredictable intervals once during a work shift.  She stated that Torres could occasionally twist, stoop, or climb stairs, but could never crouch or climb ladders.

She opined that Torres was limited in reaching, handling (gross manipulation), fingering (fine manipulation), and pushing/pulling, because these functions would cause increased joint pain and worsening of her rheumatoid arthritis.  She assessed no environmental limitations.  She opined that, on average, Torres' impairments would cause absences from work more than three times per month.

On March 9, 2012, Dr. Rios completed a Residual Functional Capacity Questionnaire.  R. 808-813.  Dr. Rios did not answer the question about the nature, frequency, and length of his contact with Torres but, as noted above, he had treated Torres since at least 2006.  He noted diagnoses of osteoarthritis and rheumatoid arthritis, and assessed her prognosis as fair.  He identified her symptoms as fatigue and pain in her shoulders, neck, upper and lower back, and knees.  He did not provide answers for multiple questions, including those asking for more details about Torres' pain, her emotional or psychological conditions, and her ability to tolerate work stress.  Regarding her functional limitations, he opined that Torres could sit for 45 minutes at a time, and stand for 15 minutes at a time.  He stated that,  in an eight-hour workday, she could sit less than two hours, and stand or walk less than two hours.  As for lifting and carrying, he opined that she occasionally could lift less than ten pounds.  He did not provide answers to questions about handling, fingering, stooping, or crouching, nor did he provide an opinion as to how often Torres would be absent

from work due to her impairments.

On March 13, 2012, the ALJ held an administrative hearing and heard testimony from Torres, Torres' son, and a vocational expert. R. 104-32.  Torres testified that she had made over $59,000 in 2010 taking care of an elderly woman, but had quit working full time because the woman needed specialized care.  She stated that more recently she had worked for two employers, one day per week for each, for about five hours per day, making $55 per day for one employer and $70 per day for the other. R. 115-16.  She had stopped working in February,  one month before the hearing, because of her appendectomy.  However, she testified that, for the past eight months, she had trouble completing her work and that her son had accompanied her to work and helped her by sweeping, bringing her clothing to wash, and helping her make beds.  Torres then would dust and wash and fold clothes.  She stated that she was unable to lift heavy things at work and that once when she was there alone, her employer sent her to lie down. R. 119-21.  She testified that she could walk about two blocks, but that after that her knees hurt and her feet were numb, and that she could not stand in line because of knee pain.  She further testified that she could only sit for fifteen or twenty minutes before she had lower back pain.  R. 122-23.

Torres' son testified that he was employed at the Port of Houston, but that over the past six or seven months he had helped his mother when his work was slow.  He

stated that he assisted her by vacuuming, carrying laundry and buckets, and cleaning mirrors.  R. 125-127.

The vocational expert ("VE") classified Torres' past relevant work as a home health aide as medium and semiskilled, and her work as a "day worker" as medium and unskilled.  The ALJ asked the VE to assume a person of Torres' age, education, and work experience, with a capacity for medium work except for a limitation for only occasional overhead reaching.  The VE testified that such a hypothetical person could do Torres' past relevant work as a home health aide.  R. 129.  When asked to further assume limitations from severe pain and other symptoms causing the hypothetical person's ability to concentrate, meet attendance standards, and perform on a regular and continuing basis, the VE testified that such a person could not perform Torres' past relevant work, or any work.  R.  129-30.

On April 20, 2012, the ALJ denied Plaintiff's request for benefits based on an finding that Torres could perform her past relevant work as a home health aide.  R. 50-70.

On May 1, 2012, Torres had a follow up appointment in Dr. Waller's office and was treated by Sreekanth Chintamaneni, M.D.  R. 43-47.  Torres reported that a new medication was helping with pain, but nevertheless rated her pain as 9/10 and fatigue as 9/10.  Dr. Chintamaneni's rheumatological examination noted tenderness in the

right shoulder, impingement of the left shoulder, slight bony enlargement and tenderness in the hands, and perilumbar tenderness.  The doctor further  noted that x-rays showed "'wear and tear' arthritis in the knees."  Torres' lab results showed anemia and decreased kidney function (due to hypertension and diabetes) and, as a result, she could not be prescribed some preferred medications for joint pain.  Torres was advised to follow up with her primary physician for close monitoring of these medical conditions.

Later in 2012, according to records submitted by Torres' counsel to the Appeals Council, Torres continued treatment with Dr. Rios.  R 6-20 (records of follow-up appointments with Dr. Rios on April 30,  July 10, July 13, August 17, and September 21, 2012).  The Appeals Council denied Plaintiff's request for review on June 27, 2013.  R. 1-5.

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  "The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole and, second, whether the Commissioner applied the proper legal standards to evaluate the evidence. *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is more than a mere scintilla and less than a preponderance. *Id*.; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

When applying the substantial evidence standard on review, the court

scrutinizes the record to determine whether such evidence is present. *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).   In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).   If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).   Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).   The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.   In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

Torres applied for both Social Security disability insurance and Supplemental

Security Income (SSI) benefits.  Social Security disability insurance benefits are authorized by Title II of the Social Security Act.  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured *and* disabled, regardless of indigence. 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability).

SSI benefits are authorized by Title XVI of the Social Security Act, and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.  20 C.F.R. § 416.110.  Eligibility for SSI is based on proof of disability and indigence.  42 U.S.C. § 1382c(a)(3) (definition of disability); 42 U.S.C. §§ 1382(a) (financial requirements).  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled. *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.  Thus, the month following an application fixes the earliest date from which SSI benefits can be paid. Eligibility for SSI, unlike eligibility for Social Security disability benefits, is not dependent on insured status.

Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act, which defines disability in virtually identical language.  Under both provisions, "disability" is defined as the inability to "engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(a)(3)(A) (SSI).  The law and regulations governing the determination of disability are the same for both programs.  *Greenspan*, 38 F.3d at 236.

## B.    Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.  *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.[2]  The claimant has the burden to prove disability under the first four steps.  *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619. If the claimant successfully carries this burden, the burden shifts to the Commissioner

---

[2]    The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

at Step Five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy. *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.  Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding. *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

In this case, at Step One, the ALJ determined that Torres had not engaged in substantial gainful activity since January 25, 2011, her alleged onset date.[3]  The ALJ found at Step Two that Torres had four severe impairments:  obesity; mild degenerative joint disease of the cervical spine and lumbar spine; bilateral shoulder arthropathy; and mild rheumatoid arthritis of the hands.  She found that although Torres had been diagnosed with diabetes mellitus and diabetic retinopathy, these impairments were not severe.  At Step Three, the ALJ concluded that Torres' impairments, considered singly or in combination, did not meet or medically equal a listed impairment in the relevant federal regulations.

Before proceeding to Step Four, the ALJ assessed Torres' residual functional

---

[3]      The ALJ also determined that Torres met the insured status requirements of the SSA through December 31, 2014.

capacity ("RFC") and found that Torres could perform "medium work . . . except she can reach overhead only occasionally." R. 60.  At Step Four, the ALJ determined that Torres was capable of performing her past relevant work as a home health aide.  She therefore concluded that she was not under a disability from January 25, 2011, through April 20, 2012, the date of her decision.

### D.    __Plaintiff's Argument for Reversal__

Plaintiff argues that the ALJ erred by improperly discounting the opinions of Torres' treating doctors.  In particular, Plaintiff argues that the ALJ improperly dismissed the opinions of Dr. Rios and Wallace and their assessments of Torres' work-related limitations.

An ALJ is legally required to evaluate every medical opinions she receives, and to consider certain factors when deciding how much weight to give the medical opinion.  20 C.F.R. §404.1527(c) (disability); 20 C.F.R. § 416.927(c) (SSI). Clear Fifth Circuit precedent requires an ALJ to give "controlling weight" to the opinion of a treating medical source's opinion, if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent" with other substantial evidence in the record.  *Newton*, 209 F.3d at 455 (internal quotation

marks and citations omitted).[4]  A specialist's opinion is afforded greater weight than a generalist's opinion.  *Id.  See* 20 C.F.R. § 404.1527(c)(5); 20 C.F.R. § 416.927(c)(5).

An ALJ may discount the weight given to a treating physician's opinion for "good cause" when the treating physician's statements are brief and conclusory, are not supported by medically acceptable clinical, laboratory, or diagnostic techniques, or are otherwise unsupported by the evidence.  *Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456.[5]  Before discounting the weight of a treating physician's opinion, an ALJ is required by regulation to consider the following factors: the physician's length of treatment of the claimant; the physician's frequency of examination; the nature and extent of the treatment relationship, the support of the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the medical record, and the physician's specialization.  *Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).  Even when an ALJ finds "good cause" to decline to give controlling weight to the treating physician's opinion, he or she must still address the required factors, and may not simply reject the opinion

---

[4]     *See* 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Giles v. Astrue*, 433 F. App'x 241, 246 (5th Cir. 2011); *Beasley v. Barnhart*, 191 F. App'x 331, 334 (5th Cir. 2006).

[5]     *See Beasley*, 191 F. App'x at 334 ("The ALJ must always give good reasons for the weight it affords the opinion [of a treating physician], and must show good cause when giving that opinion little or no weight") (internal quotation marks, alteration, and citations omitted).

outright.[6]  A treating physician's opinion is not conclusive, and the decision regarding the claimant's status rests with the ALJ.  *Greenspan*, 38 F.3d at 237.[7]

In this case, the ALJ's finding that Torres was capable of medium work, with an additional limitation as to overhead reaching, is in conflict with the opinions of Dr. Rios and Wallace about Torres' limitations.  Dr. Rios' opinion dated March 9, 2012, stated that Torres could sit for 45 minutes at a time and stand for 15 minutes at a time; that she could stand or walk less for a total of than two hours in an eight-hour workday; that she could sit for a total of less than two hours in an eight-hour workday; and that she could occasionally lift less than ten pounds.  R. 808-13.  At the time he provided the opinion, Dr. Rios had treated Torres for at least six years.  The ALJ rejected Dr. Rios' opinion, finding that it was "inconsistent with the medical record as a whole." In support, the ALJ stated as follows:

---

[6]  *Newton*, 209 F.3d at 456 ("'[A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. ***Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.***  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.'") (quoting SSR 96-2p) (emphasis added by *Newton*).

[7]  Because the determination of disability is reserved to the Commissioner, a medical source's conclusion that a claimant is "disabled" or "unable to work" is not binding on the Commissioner.  20 C.F.R. § 404.1527(d)(1); 20 C.F.R. 416.927(d)(1).  *See Thibodeaux v. Astrue*, 324 F. App'x 440, 444 (5th Cir. 2009).

> Treatment notes from early 2011 indicate essentially unremarkable examinations with diagnoses of hypertension, hyperlipidemia and anemia.  Dr. Rios' progress notes consistently indicate no motor or neurological deficits.  The radiographic studies done by Dr. Rios document only very minimal findings.

R. 64 (citations omitted).  The ALJ therefore relied on Dr. Rios' examinations, and on studies ordered by Dr. Rios, but then substituted her own judgment for the doctor's, despite the fact that Dr. Rios had reviewed the same medical evidence and reached a different conclusion.  Moreover, as Plaintiff argues, additional studies were in the record and offered further support for Dr. Rios' medical opinion.  *See* Plaintiff's Motion [Doc. # 13], at 10-11.  Even assuming the ALJ had "good cause" to discount the weight of Dr. Rios' opinion,[8] the ALJ did not consider the required factors before doing so.[9]  In fact, the ALJ made factual misstatements relevant to those required factors, stating that there was "no evidence" that Dr. Rios had examined Torres after

---

[8]     *See Newton*, 209 F.3d at 456 (ALJ may discount the weight given to a treating physician's opinion for "good cause" when the physician's statements are brief and conclusory, are not supported by medically acceptable clinical, laboratory, or diagnostic techniques, or are otherwise unsupported by the evidence).  *See Myers*, 238 F.3d at 621; *Beasley*, 191 F. App'x at 334.

[9]     Before discounting the weight of a treating physician's opinion, an ALJ is required by regulation to consider the following factors: the physician's length of treatment of the claimant; the physician's frequency of examination; the nature and extent of the treatment relationship, the support of the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the medical record, and the physician's specialization.  *Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 456; 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

February 2011, R. 64, when in fact the record demonstrates that Dr. Rios continued to treat at least through 2012. The ALJ also relied on the fact that Torres worked at a level of medium exertion until December 2010, R. 64, even though Torres' alleged onset date was not until January 25, 2011. *Newton* does not permit the ALJ's outright rejection of Dr. Rios' opinion.[10]

The ALJ also rejected the opinion of Wallace dated March 2, 2012, which assessed Torres with limitations similar to those identified by Dr. Rios. *See* R. 598-601. Based on her examinations of Torres and relevant lab work and imaging, Wallace opined that Torres was able to occasionally lift and carry ten pounds; to frequently lift and carry less than ten pounds; to stand and walk for less than two hours in an eight-hour workday; and to sit without limitation during the workday but with the need to change positions every thirty minutes. She further assessed limitations in twisting, stooping, climbing stairs, crouching, climbing ladders, reaching, handling, fingering, and pushing/pulling. She opined that, on average, Torres' impairments and treatments would cause absences from work more than three times per month. As support, Wallace cited to her physical examination of Torres, as

---

[10]    The ALJ further states that "the treating physician has an obligation to be an advocate for their patients," and therefore that "the opinion of an independent medical examiner who does not have an obligation to advocate for the patient is often more objective." R. 65.    This consideration is not a sufficient reason under *Newton* to reject the treating physician's opinion.

well as laboratory results showing "elevated ESR," and MRI examinations indicating degenerative arthritis and erosions consistent with rheumatoid arthritis.

When rejecting Wallace's opinion, the ALJ stated that the opinion was "not supported by the objective evidence," opining that "the MRIs and x-rays that show only mild findings that would not justify the significant limitations opined by Dr. [sic] Wallace."   R. 64.   The ALJ further stated that Wallace's examination of Torres showed that all ranges of motion were normal and that Torres' activities of daily living were more extensive than the limits opined by Wallace.   R. 64.   In other words, as with Dr. Rios, the ALJ examined the same medical evidence that Wallace had reviewed, but interpreted the laboratory and imaging results differently.   In discounting Wallace's opinion, the ALJ did not discuss the factors specified in the regulations.   Several of these factors, including the rheumatology specialization of Wallace's office and the consistency of her opinion with Dr. Rios' opinion, weighed against discounting her opinion.

*Newton* recognizes that an ALJ can reject the opinion of a treating medical source when that opinion is controverted by other "reliable medical evidence from a treating or examining physician."   *Newton*, 209 F.3d at 453.   In this case, however, there was no medical opinion controverting that of Dr. Rios and Wallace.   Although the ALJ cited to the consultative examination by Dr. Daniel, and characterized it as

finding that Torres had "no deficits," *see* R. 64, in fact Dr. Daniel's report was largely consistent with the limitations assessed by Dr. Rios and Wallace. Dr. Daniel's report noted diagnoses of diabetes, bilateral shoulder arthropathy, hypertension, and polyarthralgia. R. 453-55. Although he assessed her strength as intact and her reflexes, senses, and gait to be essentially normal, these assessments do not directly contradict the opinions of the treating medical sources. In fact, Dr. Daniel's report did not claim to address work-related limitations resulting from Torres' pain, such as her ability to stand for extended periods, sit for extended periods, work without interruption from impairments or treatment, or other limitations addressed by Torres' treating sources.[11]

The ALJ is not bound by a treating physician's opinion regarding Torres' ability to work.[12] Nevertheless, the opinions from Torres' treating medical sources regarding work-related limitations resulting from her medical impairments were entitled to controlling weight, absent a finding of "good cause" under *Newton* and the regulations. The ALJ discounted the opinions of Torres' treating sources in the

---

[11]    The ALJ also cites to the opinions of two SSA physicians who reviewed Torres' file, both of whom concluded that there was no evidence that Torres had a significant medically determinable impairment. R. 63-64 (citing Exhibits 3F and 5F). However, the ALJ did not rely on these opinions for her ruling, finding that "evidence received at the hearing level shows that the claimant is more limited" than was determined by these physicians. R. 64.

[12]    *Greenspan*, 38 F.3d at 237; 20 C.F.R. § 404.1527(d)(1); 20 C.F.R. 416.927(d)(1).

absence of "reliable medical evidence" contradicting the opinions of Wallace and Dr. Rios, and without making the required findings under *Newton*.[13]   As stated above, relevant factors identified in the regulations weighed against discounting the opinions of Wallace and Dr. Rios, including Dr. Rios' lengthy treating relationship with Torres, the laboratory and imaging results supporting their opinions, the rheumatology specialization of Wallace and the physicians with whom she worked, and the consistency of opinions between Rios and Wallace.

For the foregoing reasons, remand is required under *Newton*.[14]   The Court declines to reverse the Commissioner's decision, as Plaintiff requests.   Rather, the Court will permit the Commissioner to properly evaluate the medical opinions and, if warranted, to conduct a Step Five analysis.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 13] is **GRANTED**.   It is further

---

[13]     *Newton*, 209 F.3d at 453 ("absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R § 404.1527(d)(2)") (emphasis original).

[14]     Given this holding, the Court does not address other arguments raised in Plaintiff's summary judgment motion.

**ORDERED** that Defendant's request for summary judgment [Doc. # 15 ] is

**DENIED**.   It is further

**ORDERED**  that this case is **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

**SIGNED** at Houston, Texas, this **15th** day of **August, 2014.**

_____

Nancy F. Atlas

United States District Judge